R. W. Camfield v. Commissioner.
Camfield v. Commissioner
Docket No. 112451.
United States Tax Court
1944 Tax Ct. Memo LEXIS 376; 3 T.C.M. (CCH) 123; T.C.M. (RIA) 44039; February 9, 1944
*376 Allin H. Pierce, Esq., E. H. McDermott, Esq., and Frank E. Seidman, C.P.A., Peoples Nat. Bank Bldg., Grand Rapids, Michigan, for the petitioner. Philip M. Clark, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined income tax deficiencies for the calendar years of 1939 and 1940 of $364.59 and $7,369.46, respectively. The deficiencies resulted from respondent's determination that the entire net income from the Camfield Manufacturing Company was taxable to petitioner. Petitioner contends that the business was a limited partnership of himself and his wife, and that only 51 per cent of the income therefrom is taxable to him. Petitioner filed his income tax returns for the calendar years with the collector for the district of Michigan. Findings of Fact Petitioner and his wife, Marie J. Camfield, reside at Spring Lake, Michigan. They were married on January 31, 1936. During the taxable years, 1939 and 1940, petitioner was engaged in the general manufacturing business under the name of the Camfield Manufacturing Company. The business consisted largely of manufactured formed ply-wood table and lap trays. For several years prior *377 to 1937, petitioner, under the name of Camfield Manufacturing Company, had designed and merchandised ply-wood trays for the McGraw Electric Company, hereinafter referred to as McGraw, who made the Toastmaster pop-up electric toaster. Petitioner did not manufacture these trays himself, but had others do the manufacturing for him. In 1936, petitioner borrowed between $4,600 and $5,000 from McGraw. This loan was repaid in the same year. In 1937, petitioner decided that he could supply McGraw with trays at a more reasonable price if he did his own manufacturing. He lacked the necessary capital with which to buy machinery, and for the purpose of borrowing this capital petitioner contacted McGraw. McGraw agreed to make a loan to petitioner, but in doing so insisted, among other things, that a corporation be formed, and that both petitioner and his wife sign the notes for the loan. As a result of this loan, the Camfield Manufacturing Company, an Illinois corporation, was organized by McGraw's attorneys on March 19, 1937, with an authorized capital of 200 shares without par value. The incorporators consisted of petitioner and two McGraw representatives. McGraw loaned $17,000 to petitioner *378 on three promissory notes which petitioner and his wife executed as joint makers. Petitioner then transferred the $17,000 to the corporation, in exchange for 160 shares of stock which were issued to him. Petitioner also transferred to the corporation machinery valued at $4,000 in consideration of 40 additional shares of stock issued to him. Entries were made on the corporation's books showing $20,000 of paid-in capital and $1,000 paid-in surplus. The 200 shares of stock issued to petitioner were pledged to McGraw as security for the notes, and petitioner also issued to McGraw an irrevocable proxy covering the 200 shares of stock. McGraw also made an additional loan to the corporation of $15,000, evidenced by promissory notes. By separate instrument, dated April 2, 1937, petitioner and his wife jointly and severally guaranteed payment of all the corporation's indebtedness up to $50,000. At the time Mrs. Camfield executed these notes and guaranteed these obligations her personal estate did not exceed $1,000. The original directors of the corporation were petitioner and two representatives of McGraw. Petitioner was president and assistant treasurer, his wife was secretary, one of McGraw's *379 representatives held the office of vice-president, and McGraw's other representative held the offices of treasurer and assistant secretary. The two McGraw representatives and petitioner could severally draw checks on the corporation's bank account. McGraw gave the corporation an order for a large volume of trays and cutting boards. The business was successful and profitable, and on December 31, 1937, the corporation paid off in full the three notes aggregating $17,000. McGraw renewed its outstanding loans to the corporation by accepting two new promissory notes in the aggregate amount of $12,000, each of which was executed by the corporation, petitioner, and petitioner's wife. These notes were paid off in April of 1938 with funds borrowed by the corporation from a bank. McGraw released all of its control over the corporation by canceling the guarantee agreement and the proxy; by returning the 200 shares of stock to petitioner; and by having its representatives resign as officers and directors of the corporation. Upon the resignation of McGraw's representatives as officers and directors, petitioner's wife became a director of the corporation and the other vacancies were filled by *380 petitioner's attorney and employees of the corporation. After regaining control of the corporation, petitioner desired to eliminate the corporate structure. He consulted his attorney with respect to dissolution and was advised that it would be advantageous to wait untildecember of 1938 before doing so, in order to obtain the benefits of section 112 (b) (7) of the Revenue Act of 1938. Petitioner also consulted his attorney on numerous occasions with respect to making his wife a partner in the business. On October 1, 1938, petitioner transferred to the corporation his two stock certificates for 160 shares and 40 shares, respectively, in exchange for two new certificates issued in his name for 98 shares and 102 shares, respectively. On November 23, 1938, petitioner and his wife met with the assistant secretary of the corporation at the corporation's office. Petitioner endorsed and signed over to his wife the certificate for 98 shares of the corporation's stock, representing 49 per cent of the stock of the corporation, and delivered the stock to the assistant secretary with a request that a new certificate be issued in her name. The new certificate so issued was given to petitioner's *381 wife, who then returned it to petitioner unendorsed with the request that he place it in the corporation's safe where she had other important papers and valuables belonging to her. Petitioner filed a gift tax return for the year 1938 with the collector for the district of Michigan reporting the gift of 98 shares to his wife. Petitioner's wife also reported the gift in a donee's information return which she filed for the year 1938. On December 10, 1938, a plan for complete liquidation of the corporation was adopted by petitioner and his wife as sole stockowners, and the directors and officers of the corporation were directed to carry out the plan and distribute to each of the stockholders his or her proportionate share of the assets, subject to any outstanding indebtedness. On the same day, December 10, 1938, petitioner and his wife entered into an agreement for the formation of a limited partnership, under the name of the Camfield Manufacturing Company for a period of 20 years. The parties agreed to contribute to the partnership all of the assets which they would receive upon liquidation of the corporation, being respectively 51 per cent and 49 per cent. Petitioner was to be a general *382 partner and his wife a limited partner whose liability was to be limited to the assets she had in the partnership. The agreement further provided that the parties would share in the profits and losses in the same proportion as their contributions to capital; that petitioner was entitled to withdraw a salary of an amount up to $25,000 per year; and that petitioner's wife should have no voice in the management or operation of the business and should have no power to bind the partnership on any agreement, contract, or undertaking. Petitioner's wife could not assign her rights in the business without the written consent of petitioner. The agreement also provided that, upon the termination of the partnership, prior to the death or insanity of petitioner, title to all partnership property vested in petitioner, with full power to liquidate the partnership property and assets, and petitioner had full power to sell the property and assets at private sale at a price and at such time or times within his sole discretion. A certificate of limited partnership was filed with the clerk of Ottawa County, Michigan. On December 16, 1938, petitioner and his wife requested the corporation to transfer *383 the corporate assets to the partnership, and they endorsed and surrendered their stock certificates to the corporation for cancellation. On the same day, the directors of the corporation held a meeting and transferred all of the physical assets of the partnership. The bank accounts of the corporation were also transferred to the partnership and a closing journal entry was made on the books of the corporation and an opening journal entry was made on the books of the partnership, setting forth the transfers. The opening entry set forth a list of the assets and liabilities and valued the 49 percent capital contribution of petitioner's wife at $25,000, and the 51 percent contribution of petitioner at $26,000. The value of the gross assets transferred to the partnership from the corporation was $100,963.21, and the amount of the liabilities assumed by the partnership was $49,963.21. The partnership continued the same business that the corporation formerly had carried on. However, about a week or two after the partnership was formed, laminated stays and barrel headings were added to the line of products of the business. For the fiscal year ended June 30, 1940, the sales from this new business *384 amounted to $109,000, out of a total sales volume of $380,000. The number of employees of the partnership varied in the year 1939 from 50 in offseasons to 175 in seasons of peak production. At the time Marie J. Camfield married petitioner, on January 31, 1936, she had a small son by a previous marriage. She owned property of a value of approximately $1,000. Prior to her marriage to petitioner she had studied journalism at Northwestern University, worked for a newspaper, wrote advertising, and had worked as a bookkeeper and ticket seller for the Butterworth Theatres. Prior to and after her marriage to petitioner, she frequently discussed the affairs of petitioner's business with him. She was secretary of the corporation from its inception, and a director after the withdrawal of McGraw in April 1938. She did not have a desk at the plant, nor did she visit the plant frequently or regularly. At her home she cooperated in making suggestions with respect to the design and general styling of the products. She did not do the actual designing herself but frequently attended conferences with the designers and made suggestions, relying entirely on her general knowledge and ideas of what would *385 appeal to the market. She also conducted tests in her home to determine how the finish on the trays would endure when subjected to various foods, liquors, and fruit acids. She made heat tests upon steak trays which were designed to go into the oven. She had no previous experience or training in this respect. She also accompanied petitioner on business trips and entertained her husband's business acquaintances in her home. The corporation return for the fiscal year ended March 31, 1938, did not report any compensation paid to petitioner's wife as secretary of the corporation. The corporation return for the fiscal year ended March 31, 1939, reported $830 compensation paid to her as secretary of the corporation. In her individual return for the calendar year of 1938, she reported $830 as "salaries and other compensation for personal services" and $12,160.49 in dividends. After the execution of the partnership agreement, she did not perform any services for the business and did not receive any salary. From the beginning of the business and through the taxable years petitioner devoted his entire time to the engineering, manufacturing, financing, and general management of the business. *386 The corporation return for the fiscal year ended March 31, 1938, reported $6,500 paid to petitioner in salary and $11,000 in bonus. The corporation return for the period ended March 31, 1939, reported $18,033.33 paid to petitioner as compensation for services rendered. Petitioner's individual return for the calendar year of 1938 reported a salary and bonus of $19,694.73 received by him from the corporation, and $18,658.83 in dividends. After the execution of the partnership agreement, for the first six-month period ended June 30, 1939, petitioner did not withdraw any salary from the business. For the fiscal year ended June 30, 1940, petitioner withdrew $5,000 in salary from the business. Partnership accounts were kept on the accrual basis, and partnership returns were filed for the fiscal years which ended on June 30. Separate capital and income accounts were maintained. On December 16, 1938, the partnership books set up a credit to petitioner's capital account of $23,492.05, and a credit to his wife's capital account of $22,570.79. The amounts credited to the undistributed earnings accounts of the respective partners during the fiscal years ended June 30, 1939 and 1940, and the *387 amounts of the withdrawals charged to the partners were as follows: Undistributed earnings accounts
Withdrawals
December 16, 1938
Year ended
December 16, 1938
Year ended
to June 30, 1939
June 30, 1940
to June 30, 1939
June 30, 1940
Russell W. Camfield
$6,531.12
$19,520.60
$1,321.45
$8,730.70
Marie J. Camfield
6,274.99
18,755.08
1,983.42
7,240.26
The withdrawals charged to petitioner's wife in the taxable years, in the amounts of $1,983.42 and $7,240.26 respectively were disbursed to her principally in the form of cash but partly through the payment of certain of her personal accounts and obligations. The cash withdrawals paid to her in the amount of $1,470 in 1939, and $5,225 in 1940 were paid to her either monthly or sem-monthly in regular amounts. The cash withdrawals were expended largely by her for furniture, linens, drapes, books, doctor bills, dentist bills, and general expenses pertaining to the upkeep of her home and garden, including groceries for the household and clothing for both herself and her son. Personal accounts and obligations paid for her included life insurance premiums, Federal taxes, real estate obligations, household *388 expenses, bills for household equipment and various personal expenses. During the taxable years she paid $75 per month toward the purchase price of a home, title to which had been taken in the joint names of herself and her husband. The amounts paid by her toward the purchase of the home were charged to her distributive share of the partnership profits. Prior to the partnership agreement, petitioner made a separate allowance to his wife for her support and the care and upkeep of the home. At first these allowances amounted to $150 per month. They were subsequently increased to $200, then $250, and finally $300 per month. After the partnership agreement petitioner did not continue these allowances. Petitioner and his wife filed separate individual income returns for the calendar years of 1939 and 1940 and each included as gross income his or her distributive shares of the partnership income. The partnership return for the fiscal year ended June 30, 1939, reported a net income of $12,844.11, of which $6,550.50 was distributable to petitioner and reported in his individual return for 1939, and $6,293.61 was distributable to petitioner's wife and reported in her individual return for *389 1939. The partnership return for the fiscal year ended June 30, 1940, showed a net income of $44,307.20, of which $22,596.67 and $21,710.53 were distributable to petitioner and his wife, respectively. The individual return of petitioner for the year 1940 reported income from the partnership of $25,046.67, and the individual return for petitioner's wife for the year 1940 reported income from the partnership of $19,260.53. The agreement entered into between petitioner and his wife on December 10, 1938, did not create a bona fide partnership. Opinion The question for determination is whether petitioner is taxable upon the entire net income of the Camfield Manufacturing Company which purports to be a limited partnership between petitioner and his wife. Petitioner contends that during the taxable years a limited partnership existed between himself and his wife which must be recognized for tax purposes; and that by virtue of that partnership, he is taxable only on his distributive share of the partnership income. Although he argues that his wife contributed some services to the partnership, his principal contention is predicated upon the assertion that capital was an important producing *390 element of the partnership income and that his wife had contributed 49 per cent of that capital. He maintains that it is unimportant that his wife's capital contribution was in the form of a gift from himself as long as she in fact acquired a partnership interest. At the hearing, respondent was granted leave to amend his answer to allege that in the alternative the Camfield Manufacturing Company was, for tax purposes, an association taxable as a corporation. On brief, however, he advances no argument in support of this alternative contention and it is therefore deemed abandoned. He contends, however, that no bona fide partnership existed between petitioner and his wife during the taxable years. The basis of that contention is that the wife "contributed neither services nor capital, as such, to the business." He further argues that petitioner retained dominion and control of the business, and that in view of the marital relationship, the "actual economic ownership" of the business remained in petitioner. We think respondent's contention must be sustained. The services of the wife were not those which a partner of a business of this nature ordinarily performs. She did not appear at *391 the company office or plant, did no work there, and had no general or specific duties assigned to her. Her occupation was that of a housewife and she acted in that capacity in caring for her family and home. Her only contribution to the partnership in the nature of services was in making certain general suggestions in the design of the tray and in performing certain tests on the tray in her home. She had no previous specialized knowledge or training in this capacity but her suggesitons were based upon her general knowledge of what might appeal to other women. Her activities in this respect were merely those which the average wife would perform to assist her husband in like circumstances where no partnership existed. This is substantiated by her testimony that the same services were rendered by her to the corporation at a time when it was wholly owned by her husband. It must be held that for tax purposes the gift of a 49 per cent interest in the business by petitioner to his wife was not a capital contribution by the wife sufficient to make her a partner in the business. Petitioner made no actual capital contribution, and no new capital was added to the business by the gift. The company *392 did not need capital and was in good financial condition. It had been built up solely by the personal efforts and business acumen of petitioner. The so-called capital contribution of the wife was not largely instrumental in producing the company's profits as the company had already established itself prior to the time of the gift. It was petitioner's efforts and experience together with the previous good reputation of the company which produced the income during the taxable years. The business of the Camfield Manufacturing Company was operated and managed in the same manner after the gift as before the gift. An analysis of the agreement between petitioner and his wife indicates that petitioner gave his wife little more than the right to be held taxable upon her distributive share of the partnership income and thus minimize the tax upon the profits of the business. It is true that the wife, under the agreement, was entitled to receive 49 per cent of the distribution of the net profits, but in view of the marital relationship and the manner in which her withdrawals were used, that right was more fanciful than real. Prior to the agreement, petitioner had given his wife $300 per month *393 to take care of household expenses. After the agreement, that allowance was terminated, and the household expenses and other personal debts of the wife were paid by funds supplied by the Camfield Manufacturing Company and charged against her distributive share of the profits. During the taxable years, payments on account of real property owned jointly by the husband and wife were also charged against her distributive share of the profits. Under the agreement between petitioner and his wife, full power to manage and operate the business of the alleged partnership was vested in petitioner. He alone had the right to borrow money and to execute notes and other evidences of indebtedness in the name of the partnership upon such terms as in his sole discretion might seem proper or desirable. The partnership property and assets could be pledged or mortgaged only by him. The wife could not assign her rights in the business except with the written consent of petitioner. The wife had no voice in the management or operation of the business and could not bind the partnership on any agreement, contract, or undertaking. The agreement also contained the provision that upon the termination of the *394 partnership prior to the death or insanity of the husband, title to all partnership property vested in him, with full power to liquidate the partnership property and assets and "to sell for cash or credit, or both, all or any part of the property or assets in one or more private sales and at such price, and at such time or times that he may in his sole discretion deem desirable." Petitioner defends these provisions on the ground that they are not unusual in a limited partnership. It is unusual, however, for a limited partner to receive 49 per cent of the profits where her liability is limited to a capital contribution which came from the general partner and where the limited partner contributes nothing to the business which it did not have prior to the so-called partnership agreement. It is particularly unusual for a limited partner to use her withdrawals in payment of obligations of the general partner. Petitioner claims that his wife contributed a great deal in the formation of the original corporation by jointly signing its notes with him and jointly guaranteeing its obligations. However, at that time, petitioner did not recognize those contingent liabilities as being substantial *395 enough to entitle her to a share of the business. The wife's actions in assuming these obligations were at the request of McGraw, apparently, for its protection against the possibility of the shifting of assets between petitioner and his wife. The wife had no independent means or substantial estate against which those obligations could be enforced, and her acts therefore entailed little risk to herself. The original loan was made by McGraw on the previous record of petitioner and on McGraw's faith in his ability and energy. The facts in this proceeding are similar to the facts in , certiorari denied, . In that case, the husband upon dissolution of a wholly-owned corporation made a gift to his wife of one-half the assets of his business and purported to form a partnership with her. The wife made no actual contribution to the capital of the business, contributed no services, and had no voice in the conduct of the business. The Court held that no bona fide partnership existed but that the business was owned by the husband to whom all the income therefrom was properly taxable. *396 See also , aff'd, , certiorari denied, ; ; ; ; , certiorari denied, ; . In this proceeding, when the substance of the alleged partnership agreement is considered, and disregarding mere form, it is obvious that the agreement between petitioner and his wife did not constitute a bona fide partnership since it had no real business function. It was merely a device "to exalt artifice above reality." . Accordingly, Decision will be entered for respondent.